**SO ORDERED.**

**SIGNED this 28 day of February, 2022.**



_____
**David M. Warren
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 20-02895-5-DMW |
| MICHAEL KREG SHEPPARD | |
| | CHAPTER 13 |
| DEBTOR | |

| | |
|---|---|
| NATIONWIDE JUDGMENT RECOVERY, INC. | |
| PLAINTIFF | ADVERSARY PROCEEDING NO. |
| vs. | 20-00135-5-DMW |
| MICHAEL KREG SHEPPARD | |
| DEFENDANT | |

**AMENDED ORDER GRANTING MOTION TO DISMISS**

This matter comes before the court upon the Pre-Answer Motion to Dismiss Complaint to Determine Dischargeability of a Debt ("Motion to Dismiss") filed by Michael Kreg Sheppard ("Defendant") on January 25, 2021 and the Response filed by Nationwide Judgment Recovery, Inc. ("Plaintiff") on February 12, 2021. The court conducted a hearing on January 25, 2022 in Raleigh, North Carolina. Cort I. Walker, Esq. appeared for the Defendant, and D. Kyle Deak, Esq.

appeared for the Plaintiff. After consideration of the pleadings, memoranda, and arguments of counsel, the court grants the Motion to Dismiss.

## Statement of the Proceedings

The Defendant filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[1] on August 21, 2020. In his Schedule E/F: Creditors Who Have Unsecured Claims filed on August 27, 2020, the Defendant scheduled the Plaintiff as holding a disputed non-priority unsecured claim in the amount of $45,157.74 ("Debt"). The Plaintiff did not file a proof of claim in the case and is not receiving distribution on the Debt through the Defendant's confirmed Chapter 13 Plan.

On November 25, 2020, the Plaintiff initiated this adversary proceeding by filing against the Defendant a Complaint to Determine Dischargeability of Debt ("Complaint"), requesting the court to determine that the Debt is nondischargeable pursuant § 523(a)(2)(A). In the Motion to Dismiss, the Defendant seeks dismissal of the Complaint pursuant to Rule 12(b)(6)[2] of the Federal Rules of Civil Procedure.

## Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

---

[1] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.
[2] Made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

Standard of Consideration

Rule 8[3] of the Federal Rules of Civil Procedure requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides a defense to a pleaded claim for relief for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) request to dismiss "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff's Factual Allegations[4]

On August 17, 2012, the Securities and Exchange Commission initiated an action ("SEC Action") in the United States District Court for the Western District of North Carolina ("WDNC District Court") against Rex Venture Group, LLC ("RVG") d/b/a ZeekRewards.com ("ZeekRewards") and Paul Burks seeking, *inter alia*, to shut down ZeekRewards as a Ponzi and

---

[3] Made applicable to adversary proceedings by Rule 7008 of the Federal Rules of Bankruptcy Procedure.

[4] The Defendant has not answered the Complaint, and for purposes of the Motion to Dismiss, the court must assume as true all factual allegations contained in the Complaint, including exhibits thereto, and view them in the light most favorable to the Plaintiff.

3

pyramid scheme which led to over 700,000 participants losing over $700 million. ZeekRewards evolved from a "penny auction" website and allowed investors to share in profits through the purchase of premium VIP bids and monthly subscriptions and through the recruitment of new bidders and advertisers. Investors could cash in or, as encouraged by ZeekRewards, reinvest their earnings. The scheme collapsed when the incoming revenues failed to cover requested payouts.

As part of the SEC Action, on December 4, 2012, the WDNC District Court appointed Kenneth D. Bell ("Receiver")[5] as receiver of RVG's assets, rights, and interests and authorized and directed the Receiver to initiate legal proceedings to seek the avoidance of fraudulent transfers, disgorgement of profits, and any other legal and equitable relief that he deemed necessary to recover RVG's assets. On February 28, 2014, the Receiver initiated an action ("Clawback Action") in the WDNC District Court against several named defendants and a "Net Winner Class" to avoid and recover transfers of payments from ZeekRewards under the following claims for relief: (1) violation of North Carolina's Uniform Fraudulent Transfer Act ("UFTA");[6] (2) common law fraudulent transfer; and (3) constructive trust. The Net Winner Class members are defined as ZeekRewards participants who received more money from RVG and ZeekRewards than was paid for the purchase of bids, monthly subscriptions, memberships, or other fees. The Defendant was a member of the Net Winner Class, because he purchased bids and subscriptions totaling $555.00 and received commission payments totaling $34,180.76, giving him a net gain of $33,625.76.

On November 29, 2016, the WDNC District Court entered in the Clawback Action an Order ("SJ Order") granting the Receiver's motion for summary judgment against the named defendants and motion for partial summary judgment against the Net Winner Class. In the SJ

---

[5] Mr. Bell, now Judge Bell, was later succeeded by Matthew E. Orso as Receiver.
[6] In 2015, the North Carolina General Assembly replaced the UFTA with the Uniform Voidable Transactions Act.

4

Order, the court found that members of the Net Winner Class did not pay a reasonably equivalent value for their winnings from ZeekRewards and held that the net winnings received by members of the Net Winner Class were fraudulent transfers from RVG that must be repaid to the Receiver for the benefit of the receivership estate. In reaching this determination, the WDNC District Court followed a well-established presumption in law that Ponzi schemes are operated with intent of actual fraud; therefore, transfers from a Ponzi scheme may be avoided and recovered under the UFTA.

On August 14, 2017, the WDNC District Court entered a Final Judgment against the Net Winner Class which includes judgment in favor of the Receiver and against the Defendant for the amount of $45,157.74 ($33,625.76 net winnings plus $11,531.98 prejudgment interest) plus interest accruing pursuant to 28 U.S.C. § 1961 from the date of the Final Judgment until paid in full. On December 16, 2019, the Receiver assigned the Final Judgment to the Plaintiff.

Discussion

Section 523(a)(2)(A), incorporated in Chapter 13 cases by § 1328(a)(2), excepts from an individual debtor's discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained* by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (emphasis added). The Plaintiff asserts that the Defendant's voluntary participation in ZeekRewards, a Ponzi scheme determined fraudulent by the WDNC District Court, makes the Debt for the Defendant's "winnings" nondischargeable under § 523(a)(2)(A). The Defendant contends that the Complaint contains no allegations that he obtained his winnings from ZeekRewards by false pretenses, a false representation, or actual fraud.

5

In interpreting § 523(a)(2)(A), the United States Court of Appeals for the Fourth Circuit found that—

> [i]t is clear from the structure of the phrase that "to the extent obtained" modifies the money, property, services, or credit that constitutes the debt. A plain reading of this subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which *the debtor used fraudulent means* to obtain money, property, services or credit. Structurally, the subsection can have no other meaning.

*Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007) (emphasis added). The Defendant proffers, and the court agrees, that the Complaint contains no allegations that the Defendant's gain from participating in ZeekRewards was fraudulent on his behalf. The Plaintiff is merely using the WDNC District Court's conclusion that the winnings paid to members of the Net Winner Class resulted from a fraudulent Ponzi scheme as the basis for excepting the Debt from discharge under § 523(a)(2)(A).

In support of its position, the Plaintiff relies on *Husky Intern. Elecs., Inc. v. Ritz*, 578 U.S. 356 (2016), a case in which the United States Supreme Court found that in some circumstances, the recipient of a fraudulent transfer can "obtain" assets by participation in a transferor's fraud. Those circumstances, however, are when the recipient likewise possessed a fraudulent intent in the transaction. As explained by Justice Sonia Sotomayor—

> [i]t is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, *with the requisite intent*, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A). Thus, at least *sometimes* a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A).

*Id.* at 365 (emphases added) (citations omitted). Following this reasoning, the presumption that Ponzi schemes are operated with a fraudulent intent does not automatically extend to recipients of transfers made as a part of that fraud.

6

Recently, the United States Bankruptcy Court for the District of New Mexico denied summary judgment on a similar § 523(a)(2)(A) claim initiated by the Plaintiff against another member of the ZeekRewards Net Winners Class, finding that "[b]ased on *Husky*, there is little question that a judgment avoiding the transfer of assets, entered against a transferee who later files a bankruptcy case, would be nondischargeable under § 523(a)(2)(A) *if the transferee/debtor obtained the assets with fraudulent intent.*" *Nationwide Judgment Recovery Inc. v. Grimaldo (In re Grimaldo)*, No. 20-1076-t, 2021 WL 3716393, at *4 (Bankr. D.N.M. Aug. 20, 2021) (emphasis in original). The Complaint does not allege that the Defendant was involved with the operations of ZeekRewards or otherwise acted with fraudulent intent when he was drawn to participate in the ploy.[7] Accepting all the Complaint's allegations as true, the court cannot conclude that the Defendant's motive in participating in ZeekRewards was unlike that of the participants who lost money. The only obvious difference is that the Defendant elected to collect his "winnings" before the scheme collapsed. The Plaintiff has failed to state a claim upon which relief can be granted; now therefore,

It is ORDERED, ADJUDGED, and DECREED that the Motion to Dismiss be, and hereby is, granted, and the Complaint be, and hereby is, dismissed.

END OF DOCUMENT

---

[7] At the conclusion of the hearing on the Motion to Dismiss, counsel for the Plaintiff orally requested leave to amend the Complaint to include specific allegations of fraud by the Defendant; however, the court denied this request. The hearing was held exactly one year after the Defendant filed the Motion to Dismiss and after having been continued numerous times. Although several of these continuances were granted at the Defendant's request, the Plaintiff has long been aware of the Defendant's position regarding the sufficiency of the Complaint and has had ample time to seek leave to amend the Complaint.